a

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

MICHAEL HILL                         CIVIL ACTION NO. 1:19-CV-101-P
Petitioner

VERSUS                               JUDGE DEE D. DRELL

STATE OF LOUISIANA,                  MAGISTRATE JUDGE PEREZ-MONTES
Respondent

## REPORT AND RECOMMENDATION

Before the Court is a Petition for Writ of Habeas Corpus under 28 U.S.C. §
2254 (Doc. 1) filed by pro se Petitioner Michael Hill ("Hill") (#104850).  Hill is an
inmate in the custody of the Louisiana Department of Corrections, incarcerated at
the David Wade Correctional Center ("DWCC") in Homer, Louisiana.  Hill challenges
his conviction and sentence imposed in the 12th Judicial District Court, Avoyelles
Parish.

Because Hill's Petition (Doc. 1) is untimely, it should be DENIED and
DISMISSED WITH PREJUDICE.

I.      Background

The facts of this case were set forth by the Louisiana Third Circuit Court of
Appeal:

> On January 21, 1986, Contrell Alexander, a Simmesport resident was
> brutally murdered. Alexander's grandmother reported him as missing
> at 11:00 p.m. The next morning, Alexander's body was found in a ditch
> alongside "Old Highway 1" (now Highway 451), about one mile from the
> Simmesport corporate limits. The victim was found with a large gaping
> hole in the right side of his forehead. Bone, hair, and tissue fragments
> were found as much as 25 feet from the body. The authorities discovered

an old fence post near the body containing blood, hair and tissue fragments. The cause of death was a severe bludgeoning to the head.

During 1986, defendant, Michael Hill, was questioned several times by Avoyelles Parish detectives about Alexander's death. At that time, the voluntary statements given by Hill were all exculpatory.[1]  On August 27, 1991, defendant gave an inculpatory statement, placing himself at the scene of the crime and implicating Jones in the murder. Jones was then questioned. The statements of both Hill and Jones, taken together, place them both at the scene of the crime.

Jones[2] testified at trial that, on the night in question, the four co-defendants, Jones, Hill, Courtney and Pierre, and the victim, Alexander, left in his van from the Washington Teenage Center in Simmesport. While riding around, an argument ensued between Hill, Courtney and Alexander. Hill then demanded that Jones go to the Anderson home where Hill, Courtney and Alexander proceeded into the house. Jones remained in his van with Pierre. Jones stated that he did not leave because he was afraid of Hill. Shortly thereafter, Hill and Courtney exited the house carrying a limp form wrapped in a dark blanket and loaded it into the back of the van. Jones noted that Alexander's tennis shoes were sticking out of the blanket and assumed that Alexander was wrapped in the blanket.

After leaving the Anderson home, the group retraced the route taken, proceeding to La. 105 and then to its intersection with Highway 1 in Simmesport. Before arriving at the intersection defendant spoke of disposing of the body in the river, but Jones protested and instead took a left turn onto Highway 1. The group then traveled north on Highway 1, taking a right turn on a small road near Yellow Bayou Park. Jones stated that, at that time, Hill put a pistol behind his head and stated "Pain was for everybody" if he were "to tell, or do anything, or to try to stop what was going on". They proceeded down this small lane until its intersection with Old Highway 1 (Highway 451), turned right, and drove eastward toward Simmesport. Jones testified that, shortly after this right turn, the front driver's side wheel began to vibrate. Jones stopped, and Hill remedied the problem with a four way lug wrench. The group proceeded a short distance further, during which time Jones heard moans from the back of the van followed by thumping sounds. He figured

---

[1] These statements were not introduced by the State and the trial court determined them to be hearsay.

[2] Jones testified pursuant to a plea bargain agreement in which he pleaded guilty to manslaughter.

the sounds heard were blows delivered to Alexander by either Hill or Courtney. Hill then directed Jones to stop the van. While Hill and Courtney exited the side door of the van, Hill tripped on the van ledge and into the roadside ditch. Hill and Courtney removed Alexander from the rear of the van. Jones stated that, at this point, he again heard five or six thumping sounds, as though someone was beating a rug.

Thereafter, the group traveled toward Simmesport from the Old Highway 1 site, whereupon they turned around and returned to the murder scene at Hill's insistence. Hill retrieved the blanket that Alexander was wrapped in. They then traveled on Old Highway 1, turned left on Wayside Lane, and passed in front of the Mount Calvary Baptist Church which was operated by the victim's grandfather. At this point, Hill commented that they should have thrown the body there. Jones proceeded to Simmesport to drop off Pierre and Courtney and then traveled northward on Highway 1 to Hamburg where he dropped off Michael Hill at his home on Voorhies Lane.

Jones further testified that, after picking up a friend in Moreauville and visiting his girlfriend, he returned to Simmesport, participated briefly in the search for Alexander, dropped off his friend and washed his van at a local carwash. He also vacuumed the interior and cleaned blood off of the rear carpet area and four way lug wrench. David Antoine testified that he witnessed Jones cleaning his van at the carwash during the late evening hours of January 21, 1986.

In Hill's recorded oral statements of August 13 and August 27, 1991, and Jones' statement of August 29, 1991, each precisely and similarly described the route taken on the night of the murder. Furthermore, Hill, on August 13, 1991, and Jones, on August 29, 1991, separately traced the route in an automobile with Detective Lemoine and his assistants. The routes described by the parties were identical except for one minor inconsistency concerning a turnaround point. In fact, defendant's statements and Jones' statement were almost identical in all particulars except for the extent of the other's participation in the killing.

Dr. George McCormick, the State's expert forensic pathologist who performed the autopsy on the victim, testified that the fatal head injuries were consistent with being pummeled by the previously mentioned fence post and the socket portion of a lug wrench. Defendant, in his August 13, 1991 recorded statement, confirmed with particularity that a fence post and a lug wrench were used to beat the life out of Alexander.

3

State v. Hill, 610 So. 2d 1080, 1081–82 (La. Ct. App. 1992).

Hill appealed on the grounds that the jury verdict was contrary to the law and evidence presented, and that the trial court erred in refusing to admit exculpatory statements Hill made to members of the Avoyelles Parish Sheriff's Department. Id. His conviction and sentence were affirmed. Id. Hill did not seek further review in the Louisiana Supreme Court. (Doc. 1, p. 2).

Hill filed an Application for Post-Conviction Relief, which was heard by the trial court on January 25, 2017. (Doc. 1-3, p. 3). The application was denied as untimely. (Doc. 1-3, p. 3). Hill's writ application in the Louisiana Third Circuit Court of Appeal was denied as deficient. (Doc. 1-3, p. 2). The Louisiana Supreme Court denied Hill's writ application as untimely filed. (Doc. 1-3, p. 1). State v. Hill, 2018-1597 (La. 12/17/18), 258 So. 3d 600.

Hill filed a § 2254 petition claiming that the trial court lacked jurisdiction to convict him, that he was convicted based on perjured testimony, and that he received ineffective assistance of counsel. (Doc. 1-2, pp. 1-2). Hill claims that he is entitled to tolling based on "newly discovered evidence, Brady material, and actual innocence." (Doc. 1, p. 13).

## II.    Law and Analysis

### A.    Hill's petition is untimely, and he is not entitled to statutory or equitable tolling.

In 1996, as part of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Congress enacted 28 U.S.C. § 2244(d), which provides a one-year statute of limitations for filing applications for writs of habeas corpus by persons in custody

pursuant to the judgment of a state court.  The limitations period generally runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review. . . ."  28 U.S.C. § 2244(d)(1)(A). Federal courts may raise the one-year limitations period sua sponte.  See Kiser v. Johnson, 163 F.3d 326 (5th Cir. 1999).

Hill did not seek review in the Louisiana Supreme Court, so his conviction became final for AEDPA purposes on December 9, 1992, the day his writ application was denied by the Louisiana Third Circuit Court of Appeal.  28 U.S.C. § 2254(d).  Hill had one year from that date within which to file a § 2254 petition.

Although the statutory tolling provision of § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief is pending in state court is not counted toward the limitations period, Ott v. Johnson, 192 F.3d 510, 512 (5th Cir. 1999), any lapse of time before the proper filing of an application for post-conviction relief in state court is counted against the one-year limitations period, Villegas v. Johnson, 184 F.3d 467, 472 (5th Cir. 1999) (citing Flanagan v. Johnson, 154 F.3d 196, 199 (5th Cir. 1998)).

Hill's Application for Post-Conviction Relief was filed in 2017, approximately 25 years after the one-year limitations period of the AEDPA expired.  Therefore, Hill is not entitled to statutory tolling.

The AEDPA's statute of limitations is also subject to equitable tolling. See Holland v. Florida, 560 U.S. 631, 645 (2010).  However, "a petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently,

and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (internal quotation marks omitted); Davis v. Johnson, 158 F.3d 806, 811 (5th Cir. 1998) (holding that the AEDPA's statute of limitations can be equitably tolled "in rare and exceptional circumstances"). Equitable tolling applies "principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." Coleman v. Johnson, 184 F.3d 398, 402 (5th Cir. 1999). A petitioner bears the burden of proof to invoke equitable tolling. See Alexander v. Cockrell, 294 F.3d 626, 629 (5th Cir. 2002).

Hill does not provide support for an equitable tolling claim. One of the defendants, Clifton Jones, Jr., testified against Hill in exchange for the ability to plead guilty to a reduced charge of manslaughter and a 21-year sentence. State v. Pierre, 631 So.2d 427, 428 (La. 1994). The state then called Jones as its principal witness at the trial of another defendant, Irvin Pierre. Id. At Pierre's trial in 1992, Jones completely recanted his taped statement and his testimony given from Hill's trial. Id. Hill waited over 25 years to raise this issue. He was not "actively misled" or prevented from filing a timely habeas petition raising the issue.

B.    Hill cannot establish "actual innocence."

The Supreme Court has held that both a procedural bar and the expiration of the AEDPA statute of limitations can be overcome by a showing of actual innocence. McQuiggin v. Perkins, 569 U.S. 383, 386 (2013). "[A] petitioner does not meet the threshold requirement [for establishing actual innocence] unless he persuades the district court that, in light of new evidence, no juror, acting reasonably, would have

6

voted to find him guilty beyond a reasonable doubt." Id. (quoting Schlup v. Delo, 513 U.S. 298, 329 (1995)). "[S]uch a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence— that was not presented at trial." Schlup, 513 at 324.

Hill does not present any new evidence, nor can he show that no juror would have voted to find him guilty.  Even without Jones's testimony, Hill gave two inculpatory statements to law enforcement, placing himself at the scene of the crime. Hill, 610 So. 2d at 1081, 1085.  In Hill's recorded statements, he precisely described the route taken on the night of the murder, and he traced the route in an automobile with Detective Lemoine and his assistants.  Id.  Hill also confirmed with particularity that a fence post and a lug wrench were used to kill the victim.  Id.

Additionally, another witness at Hill's trial testified that she and Hill frequently discussed the murder. Id. at 1084.  The witness testified that Hill would generally state that "they killed someone; and that he didn't have anything to do with it; that he watched." Id.  The witness testified that Hill admitted to personally killing someone, then retracted the statement by saying he merely watched the murder.  Id. The witness also testified that, on another occasion, Hill pinned her arms to the bed and screamed: "'I killed someone, I killed someone, I killed someone.'"  Id.  Hill indicated to the witness that the victim was a young boy.  Id.

Because Hill does not provide any newly discovered evidence in support of his claim or establish that no juror would have voted to find him guilty, Hill cannot meet the standard set forth in McQuiggin.

### III.   Conclusion

Because Hill's § 2254 Petition is untimely, IT IS RECOMMENDED that the Petition (Doc. 1) be DENIED and DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed.R.Civ.P. 72(b), parties aggrieved by this Report and Recommendation have 14 calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within 14 days after being served with a copy thereof.  No other briefs (such as supplemental objections, reply briefs, etc.) may be filed.  Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within 14 days from the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this Court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a circuit

justice or district judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within 14 days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this ___9th___ day of April, 2019.

Joseph H.L. Perez-Montes
United States Magistrate Judge